UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PATRICIA MURPHY, et al. | ) | |
|     Plaintiffs | ) | |
| | ) | |
|     v. | ) | Civil Case No. 3:13-12839-MAP |
| | ) | |
| ROBIN HARMATZ, et al. | ) | |
|     Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF COMMUNICATIONS BETWEEN COUNSEL FOR DEFENDANT
ROBIN HARMATZ AND COUNSEL FOR DEFENDANT SERVICENET, INC.
(Docket No. 158)

I.       INTRODUCTION

Plaintiffs Patricia and Kevin Murphy ("Plaintiffs") bring this action as guardians of

Kathleen Murphy, an intellectually disabled individual who qualifies for educational, residential,

and day services from the Massachusetts Department of Developmental Services ("DDS").  Ms.

Murphy previously resided in a group home owned and operated by defendant ServiceNet under

a contract with DDS.  After Plaintiffs filed an amended complaint, Ms. Murphy was transferred

to a group home operated directly by DDS.  Plaintiffs' initial complaint and their amended

complaint asserted a broad range of claims against DDS and DDS employees in their official

capacities, as well as against ServiceNet and a number of its employees, and sought preliminary

injunctive relief.  On the defendants' motions to dismiss, the presiding District Judge dismissed

all but the following claims: a portion of Count IV, pled under 42 U.S.C. § 1983 against

defendant Robin Harmatz in her individual capacity, alleging a violation of the Fourteenth

Amendment; Count VIII, alleging a violation of the Massachusetts Civil Rights Act against Ms.

Harmatz; Count IX, alleging intentional infliction of emotional distress against Ms. Harmatz; and

so much of Count X as alleged negligent infliction of emotional distress against ServiceNet.

Plaintiffs' remaining claims are limited to seeking recovery for allegedly inadequate care in a

group home or homes operated by ServiceNet where Ms. Murphy resided, and for Ms. Harmatz'

alleged failure to address deficiencies in that care and her alleged role in causing emotional

distress to Ms. Murphy.

Presently before the court is Plaintiff's Motion to Compel Production of Communications

Between Counsel for Defendant Robin Harmatz and Counsel for Defendant ServiceNet ("Motion

to Compel").  On October 18, 2016, the court heard argument from the parties on the Motion to

Compel.  For the reasons set forth below, Plaintiff's Motion is DENIED.[1]

II.   RELEVANT PROCEDURAL BACKGROUND

Plaintiffs filed their complaint on November 8, 2013 accompanied by a motion for

preliminary injunctive relief (Dkt. Nos. 1-3).  The defendants were served on November 15,

2013 (Dkt. Nos. 9-21).  On November 21, 2013, the defendants employed by DDS filed their

opposition to Plaintiffs' motion for preliminary injunctive relief (Dkt. Nos. 23-24), which was

supported by affidavits (filed under seal) signed by Robin Harmatz, Maura Squires, and Janet

Cremins.  Ms. Squires and Ms. Cremins were ServiceNet employees (Dkt. No. 175).  The court

heard argument on and summarily denied Plaintiffs' request for preliminary injunctive relief on

November 21, 2013 (Dkt. No. 26).  Thereafter, discovery commenced.  On July 24, 2015,

---

[1] Plaintiffs have filed a motion for leave to file a second amended complaint, adding additional
individual ServiceNet employees as defendants (Dkt. No. 174).  The question of whether
Plaintiffs are granted leave to file a second amended complaint does not affect the court's
analysis and ruling on Plaintiffs' present Motion to Compel.  Even if Plaintiffs are granted leave
to file their second amended complaint, they will not be entitled to discovery of the documents
that are the subject of the instant Motion to Compel.

plaintiff Patricia Murphy served her initial and separate requests for production of documents on Ms. Harmatz and ServiceNet.

Plaintiffs' Motion to Compel was filed on September 8, 2016 (Dkt. No. 158).  Plaintiffs seek to compel the production of "all communications, including electronic communications, between counsel for defendant Robin Harmatz . . . and counsel for defendant ServiceNet, Inc" (*id*. at 1).  It appears that Plaintiffs are particularly interested in communications among opposing counsel from around the time that the defendants filed their opposition to, and the court denied, Plaintiffs' motion for preliminary injunctive relief (*id*. at 2).

III.    DISCUSSION

Plaintiffs contend that the "communications" whose production they seek are "responsive to existing document requests" (*id*. at 3). They further contend that the communications at issue are discoverable because such communications are relevant "to whether officials of [the] Commonwealth's executive branch, including Ms. Harmatz, have been engaged in a collusive relationship with corporate care providers such as ServiceNet" (*id*. at 6).  Finally, Plaintiffs argue that there is no basis for Ms. Harmatz and ServiceNet to claim that communications between their attorneys are privileged or otherwise confidential and protected from disclosure (*id*. at 3-6). Because the court disagrees with these contentions, Plaintiffs' Motion to Compel will be denied.

1.  Plaintiffs' document production requests did not describe documents evidencing communications between counsel for Ms. Harmatz and counsel for ServiceNet with reasonable particularity.

Federal Rule of Civil Procedure 34(b)(1)(A) provides that document production requests "must describe with reasonable particularity each item or category of items to be inspected[.]" Plaintiffs rely on their Request No. 4 to Ms. Harmatz, which sought the production of "[a]ny and all electronic, written or paper correspondence, whether you were the sender or recipient, in your

possession, custody or control relative to [Ms.] Murphy from June 1, 2008, to present," and their

request in the same language directed to ServiceNet (Dkt. No. 158 at 3 n.3).

Discovery of communications among opposing counsel, when counsel engaged in those

communications for purposes of preparing and mounting a defense to a pending lawsuit, is

disfavored and calls for special scrutiny. *Cf. D.O.T. Connectors, Inc. v. J.B. Nottingham & Co.,*

*Inc.*, No. 4:99CV311-WS, 2001 WL 34104929, at *1 (N.D. Fla. Jan. 22, 2001) (denying motion

to compel deposition of opposing party's attorney). Discovery requests of this kind "'disrupt[]

the adversarial system . . . add[] to the already burdensome time and costs of litigation. . . [and]

detract[] from the quality of client representation. Counsel should be free to devote his or her

time and efforts to preparing the client's case without fear of being interrogated by his or her

opponent.'" *Id.* (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)). It

follows that demands for the discovery of communications exchanged among counsel for the

opposing parties in pending litigation should be stated with particularity so that the precise nature

of the disfavored request is readily apparent and opposing parties are immediately aware of what

is being requested. That did not happen here.

While it is true that documents in the possession of a party's attorney generally are within

the custody, possession or control of the party, *see, e.g., Axler v. Sci. Ecology Grp., Inc.*, 196

F.R.D. 201, 212 (D. Mass. 2000), it does not follow that *Ms. Harmatz* or *ServiceNet* could

reasonably be described as the "sender or receiver" of communications exchanged between their

attorneys, or that such documents could reasonably be described as "relative to Ms. Murphy." If

discovery of documents evidencing communications exchanged between counsel for the

codefendants was Plaintiffs' goal, Plaintiffs could easily have described those documents in

unambiguous terms. They failed to do so. The vague and general language in which Plaintiffs'

4

requests are couched cannot reasonably be understood to encompass requests for documents evidencing communications between counsel. *Cf. Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E.*, 615 F.3d 45, 59 n.15 (1st Cir. 2010) (general request for documents related to fuel spill could not reasonably be understood as request for documents related to insurance claim).

Because Plaintiffs' document production requests did not describe documents evidencing communications exchanged between counsel for the co-defendants with reasonable particularity as the documents being sought in discovery, Plaintiffs have failed to establish an essential foundation for their motion to compel.

> 2. <u>Plaintiffs have failed to meet their burden of establishing that documents evidencing communications between counsel for Ms. Harmatz and ServiceNet are relevant to their remaining claims.</u>
>
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). "This definition of relevance reflects amendments made in December 2015 that were intended to '[r]estor[e] proportionality as an express component of the scope of discovery,' thereby preventing over-discovery and the use of discovery 'for delay or oppression.'" *United Therapeutics Corp. v. Watson Labs., Inc.*, Civil Action No. 16-mc-91176, 2016 WL 5334653, at *3 (D. Mass. Sept. 22, 2016) (quoting Advisory Committee's Notes to the 2015 amendments) (alterations in original). The party seeking information in discovery has the burden of showing its relevance. *See, e.g., Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D. Mass. 1995); *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984).

Plaintiffs claim that the documents whose production they seek to compel are relevant "to whether the Commonwealth of Massachusetts, which is charged with regulating corporate care providers such as ServiceNet, has instead engaged in an unlawful collusive relationship with ServiceNet that caused suffering to [Ms.] Murphy" (Dkt. No. 158 at 2). Because Ms. Harmatz was employed by DDS during the relevant time and Plaintiffs' claims against her are based on her actions in her professional capacity as a DDS employee, she is represented in this case by Kerry Strayer, Esq., an attorney employed by the Attorney General's Office. Plaintiffs apparently claim that Mr. Strayer's strategic decisions in the instant litigation could constitute, or lead to, evidence of an allegedly illegal collusive relationship between the Commonwealth and private vendors for DDS and that such evidence would be admissible or could lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1).

There is a fundamental flaw with Plaintiffs' sole argument for relevance: Plaintiffs are not litigating claims about the relationship between the Commonwealth of Massachusetts or its agencies and the private vendors with whom DDS contracts to provide care for developmentally disabled individuals. Rather, Plaintiffs' claims, as narrowed by this court, are limited to: (a) alleged deficiencies in the quality of the care provided to Ms. Murphy by ServiceNet while she lived in a home or homes operated by ServiceNet; and (b) whether Ms. Harmatz properly monitored that care, responded appropriately to its alleged deficiencies, or, by actions she allegedly took directed at Ms. Murphy, exacerbated Ms. Murphy's alleged distress. As the presiding District Judge observed, the focus of the amended complaint "is on a small corner of the system . . . specifically the facilities that rendered care to Ms. Murphy" (Dkt. No. 86 at 3). The claims Plaintiffs sought to assert against DDS have been dismissed with prejudice, as have their claims for appointment of a master to ensure compliance with state and federal laws and to

monitor and reform privately operated homes (Dkt. No. 73 at 16-21; Dkt. No. 86).  They have no

claims against the Commonwealth, the Office of the Attorney General, or any other agency of

the Commonwealth charged with overseeing the relationship between DDS and its private

vendors.  To the extent that Plaintiffs claim that communications between counsel for the present

co-defendants may be relevant to showing that the Attorney General's Office does not

appropriately police the relationship between DDS and its vendors, that information is not

relevant to Plaintiffs' remaining claims.  *See Carver v. Bank of New York Mellon*, C.A. No. 13-

10005-MLW, 2016 WL 1301053, at *15 (D. Mass. March 31, 2016) (motion to compel properly

denied when "discovery sought was not germane to any of the issues presented because it would

not affect the consideration of any of the claims on the merits").  Plaintiffs' failure to

demonstrate the relevance of the documents whose production they seek to compel is a second

and equally fatal flaw in their motion to compel.  *See Gavin v. Liberty Mut. Group, Inc.*, Civil

No. 11-cv-159-LM, 2012 WL 3192822, at *4 (D.N.H. Aug. 6, 2012) (party's failure to

demonstrate relevance of information the production of which she sought to compel was

sufficient reason to deny motion to compel).

3. <u>Documents evidencing communications between counsel for the co-defendants are protected from discovery by the common interest and the work product doctrines</u>.

Even if Plaintiffs had described the documents at issue with reasonable particularity and

met their burden of demonstrating the relevance of those documents, neither of which they have

done, the content of those communications would be protected from discovery by the common

interest and the work product doctrines.

> The common interest doctrine is typically understood to apply . . . to
> communications made by the client or the client's lawyer to a lawyer representing
> another in a matter of common interest. . . .  The common interest privilege is not
> an independent basis for privilege, rather it is an exception to the general rule that

> the attorney-client privilege is waived when privileged information is disclosed to a third party. . . .  This privilege allows attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege.

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002) (internal quotations and citations omitted; alteration in original).  *See Cavallaro v. United States*, 284 F.3d 236, 249-50 (1st Cir. 2002) (discussing application of common interest doctrine); *Filanowski v. Wal-Mart Stores, Inc.*, No. CIV. 99-147-B, 1999 WL 33117058, at *1 (D. Me. Oct. 29, 1999); *Schachar v. Am. Acad. of Opthalmology, Inc.*, 106 F.R.D. 187, 191 (N.D. Ill. 1985); *see also Rhodes v. AIG Domestic Claims, Inc.*, 20 Mass. L. Rptr. 491, 2006 WL 307911, at **8-11 (Mass. Supr. Ct. Jan. 27, 2006) (Gants, J.) (discussing common interest doctrine under Massachusetts law).[2]  The party asserting the privilege must show that the communications at issue were (1) made in the course of a joint defense effort; (2) designed to further that effort; and (3) that the privilege has not been waived.  *See Ken's Foods*, 213 F.R.D. at 93; *Rhodes*, 2006 WL 307911, at *8.  "A [common interest or] joint defense agreement requires there to be an agreement among the various attorneys and clients, but . . . it need not be made or memorialized in writing.  A joint defense agreement [or common interest agreement] may be made orally *or its existence may be inferred by the conduct of the parties*."  *Rhodes*, 2006 WL 307911, at *10 (emphasis supplied).

---

[2] Under Federal Rule of Evidence 501, federal common law, "as interpreted by United States courts in the light of reason and experience – governs a claim of privilege . . .  But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  The surviving claims in Plaintiffs' amended complaint include a claim against Ms. Harmatz that is governed by federal law (Count IV), and claims against Ms. Harmatz and ServiceNet that are governed by Massachusetts law (Counts VIII, IX, and X).  Neither Ms. Harmatz nor ServiceNet, the parties claiming the benefit of the work product and common interest doctrines, has addressed the choice of law question.  Because there appear to be no meaningful distinctions between federal and state law, the court concludes that it is not necessary to resolve the question of whether state or federal privilege law applies for purposes of ruling on Plaintiffs' Motion to Compel.

> The common interest doctrine does not create a new or separate privilege, but prevents waiver of the attorney-client privilege when otherwise privileged communications are disclosed to and shared, in confidence, with an attorney for a third person having a common legal interest for the purpose of rendering legal advice to the client.

*Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc.*, 870 N.E.2d 1105, 1110 (Mass. 2007).

"[T]here is no doubt that attorneys and their clients [in Massachusetts] have relied on [the common interest doctrine's] implicit existence." *Id.* at 1111. For the reasons set forth below, the court finds that the codefendants in this case implicitly entered into a joint defense or common interest agreement in response to the claims pressed by Plaintiffs.

Ms. Harmatz and ServiceNet had a common interest in defending the claims asserted by Plaintiffs. When the case was filed, Plaintiffs sought sweeping injunctive relief that would have resulted in judicial oversight of DDS' entire system of residential care for intellectually disabled residents of the Commonwealth (Dkt. No. 73 at 2, 11). Plaintiffs sought relief on the basis that DDS operated a two-tiered system of care, consisting of state-operated homes that provided sufficient services and privately-operated homes that provided substandard care (*id.* at 19). These allegations, and the resulting claims against all of the defendants, were premised on Ms. Murphy's very limited scope of experience in privately-operated group homes, including homes operated by ServiceNet (*id.*). At the inception of this case, in response to Plaintiffs' claims and the demand for injunctive relief, the defendants had a common interest in defending the quality of care rendered to Ms. Murphy in residential settings operated by ServiceNet, the quality of that care being the issue central to all of Plaintiffs' initial claims. That common interest endures through the present, as the defense against the remaining claims against Ms. Harmatz and ServiceNet continues to depend on the quality of care rendered to Ms. Murphy while she resided in a group home operated by ServiceNet. At the very least, the defendants share an interest "in

limiting the amount of damages that the [P]laintiffs would win at trial." *Rhodes*, 2006 WL 307911, at \*10.  Furthermore, counsel for the codefendants have had reason to communicate concerning Plaintiffs' discovery demands, which have been voluminous.

There are no documents listed on the Commonwealth's Privilege Log that pre-date the November 8, 2013 filing of Plaintiffs' complaint (Dkt. No. 170-2).  *Contrast Ken's Foods, Inc.*, 213 F.R.D. at 94 (critical question was whether documents for which protection was sought predated agreement to cooperate).  Nor is the court persuaded by Plaintiff's reliance on correspondence from defense counsel disavowing the existence of a formal joint defense or common interest agreement (Dkt. No. 158-2).  In response to inquiries from Plaintiffs' counsel, Mr. Strayer invoked the work product doctrine and inquired about the basis of Plaintiffs' claim that they were entitled to discovery of the confidential communications he had had in service of his client with another lawyer who was also involved in the litigation and represented another party (*id*.), thereby implicitly invoking the common interest doctrine.  Moreover, Plaintiffs' counsel couched his inquiry in the form of an ill-founded threat of using the information as evidence of bias.[3]

---

[3] The cases cited by Plaintiffs' counsel for the proposition that the existence of a joint defense agreement constituted admissible evidence of bias were inapposite.  In *Biovail Labs. Int'l SRL v. Watson Pharms., Inc.*, No. 10-20526-CIV, 2010 WL 3447187, at \*\*1-2 (S.D. Fla. Aug. 30, 2010), the court held that a garden variety common interest defense agreement – such as the implicit common interest agreement in this case – was *not* relevant as evidence of bias.  *Koita Mfg. Co., Ltd. v. Turn-Key-Tech, L.L.C.*, No. 02-CV-0273 H(JFS), 2003 WL 25674799, at \*8 (S.D. Cal. Apr. 10, 2003) was a complicated patent case where the parties' respective interests and affiliations might not be apparent to a jury.  The judge ruled that certain witnesses could be cross-examined for possible bias based on a joint defense agreement, possible communications with defense counsel, or communications with parties in related litigation.  The witnesses' interests and alignments are readily apparent in this case without reference to any implicit common interest agreement among counsel.

Because the communications at issue were exchanged in the course of a joint defense effort and were designed to further that effort, and there is nothing in the record to suggest that broader disclosure has occurred, the documents are protected from discovery by the common interest doctrine.

Communications between counsel for Ms. Harmatz and ServiceNet are also protected by the work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3).  Federal courts "'apply federal law when addressing the work product doctrine, even in diversity cases lacking any federal question.'"  *Gavin*, 2012 WL 3192822, at *5 (quoting *Precision Airmotive Corp. v. Ryan Ins. Servs., Inc.*, No. 2:10-mc-244-JHR, 2011 WL 148818, at *7 (D. Me. Jan. 17, 2011) (quoting *S.D. Warren Co. v. E. Elec. Corp.*, 201 F.R.D. 280, 282 (D. Me. 2001)).  The work product doctrine protects an attorney's written materials and mental impressions from discovery when the materials are prepared in the context of pending litigation.  *See id*.  "Work product protection is waived, not by disclosure to a third person, but 'only when documents are used in a manner contrary to the doctrine's purpose[.]'"  *Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 38 (D. Mass. 2013) (quoting *Schanfield v. Sojitz Corp. of Am.*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009)).  As courts have explained:

> The work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent.  The purpose of the work product privilege is to protect information against *opposing parties*, rather than against *all others* outside a particular confidential relationship, in order to encourage effective trial preparation.

*In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 359-60 (D. Mass. 2003) (emphasis in original).  A disclosure made in the course of trial preparation is not necessarily a waiver of work product protection.  *See Bryan Corp.*, 296 F.R.D. at 39; *see also United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).  "Rather, work product protection is waived only when

documents are used in a manner contrary to the doctrine's purpose, when disclosure '"substantially increases the opportunity for potential adversaries to obtain the information."' *Bryan Corp.*, 296 F.R.D. at 40 (quoting *Schanfield*, 258 F.R.D. at 214 (quoting *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004)).

The Commonwealth's privilege log shows that all communications between counsel for Ms. Harmatz and ServiceNet were made after Plaintiffs filed their complaint and initiated the instant case.  There can be no dispute that documents evidencing communications between counsel for the defendants were "prepared in anticipation of litigation or for trial[.]"  Fed. R. Civ. P. 26(b)(3)(A).  There is no serious dispute that the interests of the co-defendants were – and are – aligned.  *See Am. Tel. & Tel. Co.*, 642 F.2d at 1299.  Nothing in the record suggests that disclosure of information between counsel for Ms. Harmatz and ServiceNet increased the likelihood that disclosure of confidential material would be made to Plaintiffs.  *See Bryan Corp.*, 296 F.R.D. at 40; *see also Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 606 (D. Mass. 1992) (sustaining claim of work product protection when there was no indication that party resisting discovery had disclosed allegedly privileged documents to non-parties).  "[C]ourts have generally held that where the disclosing party and the third party share a common interest, there is no waiver of the work product privilege."  *Schanfield*, 258 F.R.D. at 214 (quoting *Merrill Lynch & Co.*, 229 F.R.D. at 446).  To the limited extent documents exchanged between counsel for the codefendants did not disclose substantive communications constituting work product, such documents have been disclosed (Dkt. No. 170-2).

The information whose production Plaintiffs seek to compel is protected by the work product doctrine.  Plaintiffs have made no attempt to carry their burden of showing that any exception to the doctrine applies to their request.  This is another reason Plaintiffs' Motion to

Compel should be denied.  *See Bryan Corp.*, 296 F.R.D. at 37-42; *Gavin*, 2012 WL 3192, at **4-7.

IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Production of Communications Between Counsel for Defendant Robin Harmatz and Counsel for Defendant ServiceNet is DENIED.

It is so ordered.

Dated:  December 5, 2016                    /s/ Katherine A. Robertson
                                            KATHERINE A. ROBERTSON
                                            U.S. MAGISTRATE JUDGE