UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PATRICIA A. MURPHY, V.M.D. and        )
KEVIN F. MURPHY, as they are          )
Guardians of Kathleen M. Murphy       )
    Plaintiffs                        )
                                      )
    v.                                )          Civil Case No. 13-CV-12839-MAP
                                      )
ROBIN HARMATZ and                     )
SERVICENET, INC.                      )
    Defendants.                       )

MEMORANDUM AND ORDER WITH REGARD TO PLAINTIFFS' MOTION
FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
(Dkt. No. 174)

Plaintiffs Patricia A. Murphy and Kevin F. Murphy, as they are guardians of Kathleen M. Murphy ("Plaintiffs"), have moved for leave to file a second amended complaint ("Proposed Complaint") pursuant to Federal Rule of Civil Procedure 16(b)(3)(A) (Dkt. No. 174), proposing to add four new individual defendants (one of whom was previously dismissed as a defendant) and counts against each of these individuals, as well as two new counts against defendant ServiceNet, Inc. ("ServiceNet").  The defendants oppose the motion (Dkt. Nos. 177, 178).  For the following reasons, Plaintiffs' motion for leave to file a second amended complaint will be DENIED.[1]

I.    RELEVANT BACKGROUND

Plaintiffs are the guardians of their sister, Kathleen M. Murphy ("Ms. Murphy"), an intellectually disabled adult who qualifies by reason of her disabilities for residential, educational, and day services from the Massachusetts Department of Development Services

---

[1] A magistrate judge "ha[s] the authority to decide [a] motion to amend [a complaint] outright." *Maurice v. State Farm Mut. Auto Ins. Co.*, 235 F.3d 7, 9 n.2 (1st Cir. 2000) (citing 28 U.S.C. § 636(b)(1)(A)).

1

("DDS").  On November 8, 2013, Plaintiffs filed their initial complaint naming as defendants DDS, ServiceNet, four DDS employees, and seven officers of ServiceNet.  The overarching allegation in Plaintiffs' complaint was that DDS operated a two-tier system of residential care for the intellectually disabled: homes operated directly by DDS, such as the home where Ms. Murphy presently resides, which provided high quality care, and homes operated by private corporations such as ServiceNet, in which substandard care was provided.  Plaintiffs alleged that Ms. Murphy had received substandard care in group homes operated under contract with DDS, including a group home or homes operated by ServiceNet (Dkt. No. 73 at 3-4, 11).  On November 21, 2013, the presiding District Judge held a hearing on, and denied without prejudice, Plaintiffs' motion for a preliminary injunction, finding that Plaintiffs had not adequately shown irreparable harm or a likelihood of success on the merits of their claims (*id*. at 11).

Thereafter, on December 20, 2013, while the defendants' motions to dismiss were pending, Plaintiffs filed an amended complaint as a matter of course (*id.*).  *See* Fed. R. Civ. P. 15(a)(1)(A) and (B) (a party may amend its pleading once as a matter of course within 21 days after service or, if the pleading is one to which a responsive pleading is required, within 21 days after service of a responsive pleading or a motion under Rule 12(b), (e), or (f), whichever comes earlier).

On April 8, 2015, the presiding District Judge adopted in substantial part Magistrate Judge David H. Hennessy's Report and Recommendation on Defendants' Motions to Dismiss the Amended Verified Complaint, dismissing a majority of the claims and a majority of the defendants named in the amended complaint (Dkt. Nos. 73, 86).  The court held that "[n]othing approaching a sufficiency may be located within the [amended] complaint supporting an across-

the-board allegation of any discriminatory 'two-tier' system [of care for the developmentally disabled operated by DDS]" (Dkt. No. 86 at 3).  The court's ruling on defendants' motions to dismiss substantially limited the scope of this suit: there remained only one count asserted against ServiceNet for negligent infliction of emotional distress and three counts against Robin Harmatz individually, in her capacity as a former DDS employee, those being under 42 U.S.C. § 1983, the Massachusetts Civil Rights Act, and for intentional infliction of emotional distress (Dkt. No. 86 at 4-6).

Following the court's ruling on the defendants' motions to dismiss, the parties appeared before the court on May 21, 2015 for an initial scheduling conference (Dkt. No. 90).  The resulting scheduling order set discovery deadlines, and, of note for purposes of this motion, set a July 29, 2015 deadline for the parties to file motions for leave to amend their pleadings (Dkt. No. 90).  No party moved for an extension of this deadline.  Notwithstanding that the issues in the case had been substantially narrowed, discovery was contentious and time-consuming. Following several extensions prompted by the parties' motions, non-expert discovery closed on September 30, 2016 (Dkt. No. 144).  On November 14, 2016, Plaintiffs filed the motion presently before the court (Dkt. No. 174).

II.    DISCUSSION

The default rule mandates that leave to amend a complaint is to be "'freely given when justice so requires.'"  *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Fed. R. Civ. P. 15(a)).  "As the case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting."  *Id*.  "Once [as in this case] a scheduling order is in place, the liberal default rule is replaced by the more demanding 'good cause' standard of Fed. R. Civ P. 16(b)."  *Id.* (citing *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152,

154-55 (1st Cir. 2004)).  "Rule 16's 'good cause' standard 'focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent.'" *Somascan, Inc. v. Philips Med. Sys. Nederland, B.V.*, 714 F.3d 62, 64 (1st Cir. 2013) (quoting *Steir*, 383 F.3d at 12).  Nonetheless, prejudice to opposing parties and the burden on the court remain factors that the court should take into account.  "Regardless of the context, the longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."  *Steir*, 383 F.3d at 12 (citing *Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52-53 (1st Cir. 1998)).  "Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy . . . '"  *Id.* (quoting *Acosta-Mestre*, 156 F.3d at 52).

"A 'considerable' amount of time certainly has passed here."  *United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 343 (D. Mass. 2015).  Plaintiffs filed their initial complaint more than three years ago, in November 2013.  After the presiding District Judge denied their motion for preliminary injunctive relief, they filed their amended complaint on December 20, 2013.  This motion was filed on October 14, 2016, close to three years after the initial complaint was filed, more than fourteen months after the July 2015 deadline in the scheduling order for filing motions for leave to amend a pleading, and two weeks after the close of non-expert discovery, which had been extended for limited purposes only.  At this late stage of the proceedings, after the close of non-expert discovery, Plaintiffs propose to name four new individual defendants, add counts against each of these individuals, add additional allegations of misconduct by Ms. Harmatz, and assert new theories of liability against Ms. Harmatz and

ServiceNet (Dkt. 174-1).  Following dismissal of the claims Plaintiffs advanced based on their allegations of a two-tiered system of care, what remained of the initial complaint was focused largely on allegations of misconduct by Ms. Harmatz.  The court credits ServiceNet's representation that it would be required to make major alterations in its defense strategy and trial tactics if Plaintiffs are permitted to amend their complaint again at this late date (Dkt. No. 178 at 6-7).

Plaintiffs' sole justification for this tardy motion is their generalized assertion that they have been "placed at an unfair disadvantage concerning discovery" (Dkt. No. 174 at 2).  This assertion is unpersuasive.  As Ms. Murphy's guardians, Plaintiffs have had continuous access to knowledge about her care while she resided in homes operated by ServiceNet.  As early as late 2008, through the attorneys who continue to represent them, Plaintiffs were negotiating with DDS for a change of residence for Ms. Murphy based on their dissatisfaction with the care she was receiving in ServiceNet facilities (Dkt. No. 174-1 at 24-25).  The claims directed at nurse Janet Cremins in the Proposed Complaint are based on Ms. Cremins' alleged failure to monitor and treat Ms. Murphy's high blood pressure (Dkt. No, 174-1 at 19-23).  Plaintiffs' initial complaint included allegations about Ms. Murphy's blood pressure levels gleaned from review of shift notes, weekly data sheets, medication reports, and other records related to Ms. Murphy's treatment and care (Dkt. No. 1 at 29), and it is apparent to the court, based on discovery disputes, that Plaintiffs have been aware of Ms. Cremins' role for some time (e.g., Dkt. Nos. 116-21).

Plaintiffs named Abbas Hamdan as a defendant in their initial complaint, and were aware of his role at ServiceNet (Dkt. No. 1).  They alleged in their amended complaint, as they do in the Proposed Complaint, that Mr. Hamdan was at all relevant times aware of the severe harm being inflicted on Ms. Murphy while she was cared for in a ServiceNet facility (Dkt. No. 42 at

62).  Plaintiffs deposed Mr. Hamdan in January 2016, some nine months before the instant

motion was filed.  The first day of deposition for Claire Kuhn, Ph.D., was on July 25, 2016 (Dkt.

No. 177 at 3).  To the extent the claims in the Proposed Complaint are based on affidavits

attested to by Ms. Cremins and Ms. Harmatz and filed in opposition to Plaintiffs' motion for a

preliminary injunction (Dkt. No. 174-1 at 19-23; 27-29), Plaintiffs have known about the

contents of those affidavits since November 21, 2013 (Dkt. No. 175, filed under seal on

November 21, 2013).  Plaintiffs have failed to offer any explanation as to why they would have

been unaware prior to October 2016 of alleged actions directed at Ms. Murphy by Beverly

Darby, ServiceNet's Program Director.

Of note, on July 29, 2016, Plaintiffs filed a complaint in the Superior Court Department

of the Massachusetts Trial Court naming as defendants Ms. Cremins and Dr. Kuhn, raising

allegations about their alleged mistreatment of Ms. Murphy.  Plaintiffs did not serve the state

court complaint until October 2016, after the close of non-expert discovery in this case.  The

allegations in the state court complaint concerning Ms. Cremins and Ms. Kuhn generally mirror

the allegations in the Proposed Complaint, and there is an overlap of state law claims.[2]  If

Plaintiffs could file the state court complaint attached hereto as Exhibit 1 in July 2016, they

could have filed the motion presently before the court in the same timeframe, before the close of

non-expert discovery.[3]  They chose not to do so.

---

[2] Copies of the state court complaint and the docket for the state court action are attached hereto as Exhibit 1.

[3] It is difficult to avoid the conclusion that Plaintiffs have engaged in gamesmanship in filing their motion for leave to amend.  The delay in service of the state court complaint until after the close of discovery in the instant case is troubling.  Equally troubling is Plaintiffs' cavalier attitude towards their obligation to confer in good faith with opposing counsel (Dkt. No. 174-3). Generally speaking, an attorney cannot meaningfully confer about the issues raised by a proposed amended complaint without seeing that complaint, much less assent to its filing. Plaintiffs' counsel should have provided a copy of the Proposed Complaint to opposing counsel

Furthermore, the court "rejects [Plaintiffs'] assurance that the additional claims will not require further discovery, engendering delay and prejudicing the [d]efendants." *Eastern Fisheries, Inc. v. Airgas USA, LLC*, 166 F. Supp. 3d 124, 127 (D. Mass. 2016) (denying plaintiff's motion for leave to file an amended complaint); *see also Cyberonics, Inc.*, 146 F. Supp. 3d at 343 (collecting cases).  At the very least, any newly named defendant would be entitled to conduct discovery, if not to move for dismissal of some or all of the claims asserted in the Proposed Complaint, further postponing resolution of a case that has already been pending for more than three years.  The court denies Plaintiffs' Motion for leave to amend for failure to demonstrate good cause.  *See id.*

III.   <u>CONCLUSION</u>

For the reasons stated above, Plaintiffs' Motion for Leave to File Second Amended Complaint (Dkt. No. 174) is DENIED.  It is so ordered.

Dated: December 28, 2016                      /s/ Katherine A. Robertson
                                              KATHERINE A. ROBERTSON
                                              United States Magistrate Judge

---

as a basis for a good faith conference in an attempt to resolve or narrow the issues before filing their motion.  *See* Local Rule 7.1.  Because the court has denied the motion for leave to amend on substantive grounds, it does not rely on the failure to comply with Local Rule 7.1 as a basis for denial of the motion to file the Proposed Complaint.